# EXHIBIT A

**FILED**
**12/11/2017 12:48 PM**
**ERIN CARTWRIGHT WEINSTEIN**
**Clerk of the Circuit Court**
**Lake County, Illinois**

MITCHELL HOFFMAN

# IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
## LAKE COUNTY, ILLINOIS

| | |
|---|---|
| VILLAGE OF BARRINGTON, and VILLAGE OF LAKE ZURICH, | ) ) ) ) |
| | ) 17 L 979 |
| Plaintiffs, | ) ) |
| v. | ) No. |
| | ) |
| STANISLAW KACKI and XAN SYSTEMS, INC., | ) ) |
| | ) |
| Defendants. | ) |

**NOTICE**
**PURSUANT TO LCR - 2-2.14**
THIS CASE IS HEREBY SET FOR AN INITIAL CASE MANAGEMENT CONFERENCE
IN COURTROOM C407 ON
3/15/18 AT 9:00AM A.M./P.M. XX
FAILURE TO APPEAR MAY RESULT IN THE CASE BEING DISMISSED OR
AN ORDER OF DEFAULT BEING ENTERED.

## COMPLAINT

NOW COMES the Plaintiffs, VILLAGE OF BARRINGTON and VILLAGE OF LAKE

ZURICH, by and through their attorneys, CHILTON YAMBERT PORTER LLP, and complaining

of the Defendants STANISLAW KACKI and XAN SYSTEMS, INC., state as follows:

### Parties

1.      The Village of Barrington is a municipal corporation located in Lake County in the

State of Illinois.

2.      The Village of Lake Zurich is a municipal corporation located in Lake County in

the State of Illinois.

3.      Stanislaw Kacki is a resident of the Province of Ontario, Canada. Stanislaw Kacki

owned and/or operated a tractor trailer which was involved in an accident on March 7, 2017, on

West Northwest Highway at or near its intersection with Hart Road in the City of Barrington.

4.      Upon information and belief, Stanislaw Kacki is an employee and/or agent of Xan

Systems, Inc.

5.      Xan Systems, Inc. is a freight shipping and trucking company based in the Province

of Ontario, Canada.

6.    Xan Systems, Inc. operates in the United States under United States Department of Transportation number 2408432.

7.    Upon information and belief Stanislaw Kacki was operating as an agent and/or employee of Xan Systems, Inc. on March 7, 2017, when he owned and/or operated a tractor trailer in the Village of Barrington.

**Facts Common to All Counts**

8.    On March 7, 2017, at or near 11:30 p.m., Stanislaw Kacki owned and/or operated a tractor trailer and driving in a northwesterly direction on West Northwest Highway at or near its intersection with Hart Road in Barrington, Illinois.

9.    At all times relevant to this Complaint, Stanislaw Kacki was the driver of the tractor trailer with the knowledge, consent, and as employee and/or agent for and on behalf of Co-Defendant, Xan Systems, Inc.

10.    At the time of the accident, the tractor trailer Stanislaw Kacki was driving as an agent and/or employee of Xan Systems, Inc. was carrying a chemical known as methylene diphenyl diisocyanate.

11.    Methylene diphenyl diisocyanate is classified as a hazardous chemical under OSHA Hazard Communication Standard, 29 CFR 1910.1200.

12.    Upon information and belief, at the time of the accident, the tractor trailer owned and/or operated by Stanislaw Kacki as agent and/or employee of Xan Systems, Inc. was also carrying approximately 140 gallons of bio-diesel fuel.

13.    At approximately 11:30 p.m. on March 7, 2017, the tractor trailer owned and/or operated by Stanislaw Kacki as agent and/or employee of Xan Systems, Inc. rear-ended a pickup

truck driven by Perez Villalobos at the intersection of West Northwest Highway and Hart Road in Barrington, Illinois.

14.     As a direct result of the collision between the tractor trailer operated by Stanislaw Kacki and the pickup truck operated by Perez Villalobos, the tractor started on fire and the load spilled onto the roadway and surrounding areas.

15.     Defendant Stanislaw Kacki told the responding fire personnel that the tractor trailer was transporting vegetable oil.

16.     The Village of Barrington is a member of the Mutual Aid Box Alarm System (MABAS) under which the Village and other Governmental units agree to assist each other at times in fighting fires and providing aid during emergencies and disasters. The MABAS Agreement is attached hereto as Exhibit "A."

17.     Pursuant to the MABAS Agreement surrounding fire departments, including the Village of Barrington and Village of Lake Zurich responded to this incident.

18.     The Village of Barrington and Village of Lake did not learn that the spilled load contained methylene diphenyl diisocyanate until sometime after fire fighting efforts began and after their personnel, who were not wearing protective gear, came into contact with the methylene diphenyl diisocyanate.

19.     In the course of extinguishing the fire and containing the spill, personnel of the Village of Barrington and the Village of Lake Zurich came into contact with the methylene diphenyl diisocyanate spill, which spilled from the tractor trailer operated by Stanislaw Kacki as agent and/or employee of Xan Systems, Inc.

20.     During the course of responding to the fire and spill on March 7, 2017, the equipment worn and used by personnel of the Village of and Village of Lake Zurich became

exposed to the methylene diphenyl diisocyanate.

21.     As a direct and proximate result of the gear and equipment exposure to methylene diphenyl diisocyanate, the gear and equipment was rendered unusable and without value.

22.     The Village of Barrington and Village of Lake Zurich each incurred additional response costs to the fire and chemical spill which occurred on March 7, 2017, in the form of, but not limited to, wages and salaries of their respective fire department personnel, overtime of their respective fire department personnel, and incidental expenses associated with the call out of their respective personnel.

## COUNT I
### Plaintiffs v. Stanislaw Kacki
### (Negligence)

23.     Plaintiffs restate, reallege, and incorporate herein Paragraphs 1 through 22 of this Complaint as if the same were fully set forth herein.

24.     At all times relevant to this Complaint, Defendant Stanislaw Kacki was the owner and/or operator of the tractor trailer with knowledge, consent, permission, and as agent for Co-Defendant, Xan Systems, Inc.

25.     That at said time and place, Stanislaw Kacki negligently owned and/or operated and propelled his tractor trailer so that as a direct and proximate result thereof, forcibly and violently collided with the rear of Mr. Villalobos' pickup truck when the Defendant Stanislaw Kacki failed to stop, yield, and otherwise control his vehicle.

26.     That at the time of the accident and all times relevant to this Complaint, the Defendant, Stanislaw Kacki was guilty under Illinois Law of one or more of the following negligent acts or omissions:

a) Defendant failed to stop when danger was imminent.

b) Operated said tractor trailer without keeping a proper and sufficient lookout for other motor vehicles in and around the area.

c) Proceeded at a speed that was greater than reasonable and proper with regard to traffic conditions in violation of 625 ILCS 5/11-601(a).

d) Failed to decrease the speed of the tractor trailer so as to avoid colliding with a vehicle operated by Mr. Villalobos in violation of 625 ILCS 5/11-301(a).

e) Was otherwise careless and negligent.

27.    That as a direct and proximate result of one or more of the foregoing careless and negligent acts, the tractor trailer owned and/or operated by Defendant Stanislaw Kacki collided with the vehicle driven by Mr. Villalobos.

28.    That as a direct and proximate result of one or more of the foregoing careless and negligent acts, the load of methylene diphenyl diisocyanate which was being carried by Stanislaw Kacki spilled onto the roadway and surrounding areas and required clean-up by members of the Village of Barrington and Village of Lake Zurich.

29.    That as a direct and proximate result of the aforesaid acts, Plaintiffs Village of Barrington and Village of Lake Zurich suffered damage to their respective firefighter equipment and gear which necessitated replacement and expended large sums of money to clean up the spilled methylene diphenyl diisocyanate.

WHEREFORE, the Plaintiffs, VILLAGE OF BARRINGTON and VILLAGE OF LAKE ZURICH pray for judgment against the Defendant STANISLAW KACKI in a sum in excess of $50,000.00, plus costs of this suit.

### COUNT II
### Plaintiffs v. Xan Systems, Inc.
### (Negligence)

30.    Plaintiffs restate, reallege, and incorporate herein Paragraphs 1 through 22 of this

Complaint as if the same were fully set forth herein.

31. Upon information and belief, at all times relevant to this Complaint, Defendant Xan Systems, Inc. was the owner and/or lessor of the tractor trailer vehicle operated by Co-Defendant Stanislaw Kacki.

32. At all times relevant to this Complaint, Co-Defendant Stanislaw Kacki was the owner and/or operator of said tractor trailer with the knowledge, consent and as employee and/or agent for and on behalf of Defendant, Xan Systems, Inc.

33. At all times relevant to this Complaint, it was the duty of Xan Systems, Inc. to properly train, supervise, and otherwise ensure that Co-Defendant, Stanislaw Kacki exercised care for the safety of all persons and property.

34. At the aforementioned time and place, the tractor trailer operated by Co-Defendant Stanislaw Kacki rear-ended the vehicle operated by Mr. Villalobos as fully set forth in Count I of this Complaint.

35. At all times relevant to this Complaint, it was the duty of Xan Systems, Inc. to ensure that Co-Defendant, Stanislaw Kacki exercise ordinary care for the safety of all persons and property while operating the tractor trailer.

36. In violation of its duties under Illinois Law, Xan Systems, Inc., by and through Co-Defendant, Stanislaw Kacki, was careless and negligent in that:

a) Xan Systems, Inc. permitted, authorized, and directed Co-Defendant, Stanislaw Kacki to operate said vehicle without proper training and supervision.

b) Xan Systems, Inc. failed to direct Co-Defendant, Stanislaw Kacki on the proper handling and safety precautions in the operation of said vehicle and equipment.

37. That as a direct and proximate result of one or more of the foregoing careless and

negligent acts, the tractor trailer owned and/or operated by Defendant Stanislaw Kacki collided with the vehicle driven by Mr. Villalobos.

38.     That as a direct and proximate result of one or more of the foregoing careless and negligent acts, the load of methylene diphenyl diisocyanate which was being carried by Stanislaw Kacki spilled and required clean-up by members of the Village of Barrington and Village of Lake Zurich.

39.     That as a direct and proximate result of the aforesaid acts, Plaintiffs Village of Barrington and Village of Lake Zurich suffered damage to their respective firefighter equipment and gear which necessitated a replacement and expended large sums of money to clean up the spilled methylene diphenyl diisocyanate.

WHEREFORE, the Plaintiffs, VILLAGE OF BARRINGTON and VILLAGE OF LAKE ZURICH pray for judgment against the Defendant XAN SYSTEMS, INC. in a sum in excess of $50,000.00, plus costs of this suit.

### COUNT III
### Plaintiffs v. Defendants
### (Violation of Barrington Village Code)

40.     Plaintiffs restate, reallege, and incorporate herein Paragraphs 1 through 22 of this Complaint as Paragraphs 1 through 22 of this Count I as if the same were fully set forth herein.

41.     At all times relevant to this Complaint, there was in place Village of Barrington Ordinance Number 2450 entitled "An ordinance adding a new Article IV, hazardous substances removal and abatement to Chapter 10 of the Barrington Village Code". A copy of this Ordinance is attached hereto as Exhibit B.

42.     Methylene diphenyl diisocyanate which spilled from the tractor trailer owned by Xan Systems, Inc. and operated by Stanislaw Kacki was a "Hazardous Material" as defined by

Section 4-4-2 of the Village of Barrington Municipal Code.

43.     The spill of methylene diphenyl diisocyanate which occurred on March 7, 2017, was both a "Hazardous Material incident" and a "Release" as defined by Section 4-4-2 of the Village of Barrington Municipal Code.

44.     The Village of Barrington Municipal Code defines a "responsible party" as a person or entity who "have custody of bulk or non-bulk packaging or a transport vehicle that contains hazardous materials." Both Defendants Stanislaw Kacki and Xan Systems, Inc. fit this definition for "responsible party."

45.     The Village Ordinance number 2450 and Section 4-4-2 of the Village of Barrington Municipal Code, *inter alia*, provides that responsible parties for a hazardous materials release are joint and severely liable to the Village for all direct and indirect costs incurred by the Village and other responding municipalities under the MABAS System.

WHEREFORE, the Plaintiffs, VILLAGE OF BARRINGTON and VILLAGE OF LAKE ZURICH pray for judgment against the Defendants STANISLAW KACKI and XAN SYSTEMS, INC. in a sum in excess of $50,000.00, plus costs of this suit.

     **\*Plaintiffs demand trial by jury.**

                              Respectfully submitted,

                              Jon Yambert

Jon Yambert (6184827)
Email: jyambert@cyp-law.com
Chilton Yambert Porter LLP
2000 S. Batavia Ave., 2nd Fl.
Geneva, Illinois 60134
630/262-4000; 630/262-8299

# IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
# LAKE COUNTY, ILLINOIS

| | | |
|---|---|---|
| VILLAGE OF BARRINGTON, and<br>VILLAGE OF LAKE ZURICH, | ) | |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| STANISLAW KACKI and | ) | Amount claimed: In excess of minimum |
| XAN SYSTEMS, INC., | ) | jurisdictional amount |
| | ) | |
| **Defendants.** | ) | |

## RULE 222 AFFIDAVIT

I, Jon Yambert, being duly sworn under oath, depose and state as follows:

1.     I am the attorney for the Plaintiffs in the above captioned matter.


2.     The total of money damages sought will exceed the minimum amount allowed to
       establish jurisdiction in the Law Division of the Circuit Court of Lake County,
       Illinois.

                                                   _____
                                                   Jon Yambert

Subscribed and sworn to before
Me on this 7ᵗʰ day of December, 2017.

OFFICIAL SEAL
DENISE D HAYS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:01/26/21

Jon Yambert (jyambert@cyp-law.com)
CHILTON YAMBERT PORTER LLP
20000 S. Batavia Ave., 2ⁿᵈ Fl.
Geneva, IL 60134
630-262-4000/ 630-262-8299
ARDC: 6184827

# Exhibit A: MABAS Agreement

A RESOLUTION ESTABLISHING A FIRE MUTUAL AID RESPONSE
RESOLUTION # *1219*

WHEREAS, all parties have been participating in the Mutual Aid Box Alarm System (MABAS) to provide for communication procedures and other necessary functions to further the provision of said protection of life and property from an emergency or disaster; and

WHEREAS, an ad hoc committee has revised the existing MABAS contract to address the dynamics of change that have impacted upon the fire service since the original contract; and

WHEREAS, the Constitution of the State of Illinois, 1970, Article VII, Section 10, authorizes units of local government to contract otherwise associate among themselves in any manner not prohibited by law or ordinance; and

WHEREAS, the Illinois Revised Statutes, 1985, Chapter 127, Section 741 et seq., entitled the "Intergovernmental Cooperation Act," provides that any power or powers, privileges or authority exercised or which may be exercised by a unit of local government may be exercised and enjoyed jointly with any unit of local government; and

WHEREAS, the Illinois Revised Statutes, 1985, Chapter 127, Section 745, provides that any one or more public agencies may contract with any one or more public agencies to perform any governmental service, activity or undertaking which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract; and

WHEREAS, the parties hereto have determined that it is in their best interests to enter into this agreement to secure to each the benefits of mutual aid in fire protection, firefighting, and the protection of life and property from an emergency or disaster; and

WHEREAS, the purpose of said organization is to establish procedures to be followed in an emergency situation that threatens or causes loss of life and property and exceeds the physical and organizational capabilities of a single unit of local government; and

WHEREAS, the President and Board of Trustees of the Village of Barrington after due investigation have determined that membership in said organization will benefit the residents of said Village.

NOW, THEREFORE, BE IT RESOLVED by the President and Board of Trustees of the Village of Barrington, Cook and Lake Counties, Illinois as follows:

    SECTION 1:  That the Village President and the Village Clerk  be
and  are hereby authorized to execute an Agreement for Participation
in the Mutual Aid Box Alarm System, a copy of said  Agreement  being
attached hereto and being made a part hereof.

PASSED THIS 23RD DAY OF OCTOBER 1989 BY ROLL CALL VOTE AS FOLLOWS:

| AYES | NAYS | ABSENT | ABSTAIN |
|------|------|--------|---------|
| *LEE* | | | |
| *BUSH* | | | |
| *BURDETTE* | | | |
| *EVERETT* | | | |
| *HAMELBERG* | | | |
| *BOYD* | | | |
| *FONSBERG* | | | |

APPROVED THIS *25TH* DAY OF OCTOBER 1989

_____
VILLAGE PRESIDENT

ATTESTED AND FILED THIS

*26th* DAY OF OCTOBER 1989.

*Mary Slocum by Nancy Barrett, Deputy V.C.*
VILLAGE CLERK

–2–

## MUTUAL AID BOX ALARM SYSTEM
## AGREEMENT

This Agreement made and entered into the date set forth next to the signature of the respective parties, by and between the units of local government subscribed hereto (hereafter "Unit(s)") that have approved this Agreement and adopted same in manner as provided by law and are hereafter listed at the end of this Agreement.

WHEREAS, the Constitution of the State of Illinois, 1970, Article VII, Section 10, authorizes units of local government to contract or otherwise associate among themselves in any manner not prohibited by law or ordinance; and,

WHEREAS, the Illinois Revised Statutes, 1987, Chapter 127, Section 741 et seq., entitled the "Intergovernmental Cooperation Act", provides that any power or powers, privileges or authority exercised or which may be exercised by a unit of local government may be exercised and enjoyed jointly with any other unit of local government; and,

WHEREAS, the Illinois Revised Statutes, 1987, Chapter 127, Section 745, provides that any one or more public agencies may contract with any one or more public agencies to perform any governmental service, activity or undertaking which any of the public agencies entering into the contract is authorized by law to perform, provided that such contract shall be authorized by the governing body of each party to the contract; and,

- 1 -

WHEREAS, the parties hereto have determined that is is in their best interests to enter into this Agreement to secure to each the benefits of mutual aid in fire protection, firefighting and the protection of life and property from an emergency or disaster; and,

WHEREAS, the parties hereto have determined that it is in their best interests to form an association to provide for communications procedures, training and other necessary functions to further the provision of said protection of life and property from an emergency or disaster.

NOW THEREFORE, in consideration of the foregoing recitals, the Unit's membership in the Mutual Aid Box Alarm System (hereinafter "MABAS") and the covenants contained herein, THE PARTIES HERETO AGREE AS FOLLOWS:

## SECTION ONE

### Purpose

It is recognized and acknowledged that in certain situations, such as, but not limited to, emergencies, natural disasters and man-made catastrophies, the use of an individual Member Unit's personnel and equipment to perform functions outside the territorial limits of the Member Unit is desirable and necessary to preserve and protect the health, safety and welfare of the public. It is further expressly acknowledged that in certain situations, such as the aforementioned, the use of other Member Unit's personnel and equipment to perform functions within the territorial limits of a Member Unit is desirable and necessary to preserve and protect the health, safety and welfare of the public. Further, it is acknowledged that coordination of mutual aid through the Mutual Aid Box Alarm System is desirable for the effective and efficient provision of mutual aid.

- 2 -

## SECTION TWO

### Definitions

For the purpose of this Agreement, the following terms as used in this agreement shall be defined as follows:

A. "Mutual Aid Box Alarm System (hereinafter referred to as "MABAS"): A definite and prearranged plan whereby response and assistance is provided to a Stricken Unit by the Aiding Unit(s) in accordance with the system established and maintained by the MABAS Member Units and amended from time to time;

B. "Member Unit": A unit of local government including but not limited to a city, village or Fire Protection District having a fire department recognized by the State of Illinois, or an intergovernmental agency and the units of which the intergovernmental agency is comprised which is a party to the MABAS Agreement and has been appropriately authorized by the governing body to enter into such agreement, and to comply with the rules and regulations of MABAS;

C. "Stricken Unit": A Member Unit which requests aid in the event of an emergency;

D. "Aiding Unit": A Member Unit furnishing equipment, personnel, and/or services to a Stricken Unit;

- 3 -

E. "Emergency": An occurrence or condition in a Member Unit's territorial jurisdiction which results in a situation of such magnitude and/or consequence that it cannot be adequately handled by the Stricken Unit and such that a Member Unit determines the necessity and advisability of requesting aid.

F. "Division": The geographically associated Member Units or unit which have been grouped for operational efficiency and representation of those Member Units.

G. "Training": The regular scheduled practice of emergency procedures during non-emergency drills to implement the necessary joint operations of MABAS.

H. "Executive Board": The governing body of MABAS comprised of Division representatives.

## SECTION THREE

### Authority and Action to Effect Mutual Aid

A. The Member Units hereby authorize and direct their respective Fire Chief or his designee to take necessary and proper action to render and/or request mutual aid from other Member Units in accordance with the policies and procedures established and maintained by the MABAS Member Units. The aid rendered shall be to the extent of available personnel and equipment not required for adequate protection of the territorial limits of the Aiding Unit. The judgement of the Fire Chief, or his designee, of the Aiding Unit shall be final as to the personnel and equipment available to render aid.

- 4 -

B.  Whenever an emergency occurs and conditions are such that the Fire Chief, or his designee, of the Stricken Unit determines it advisable to request aid pursuant to this Agreement, he shall notify the Aiding Unit of the nature and location of the emergency and the type and amount of equipment and personnel and/or services requested from the Aiding Unit.

C.  The Fire Chief, or his designee, of the Aiding Unit shall take the following action immediately upon being requested for aid:

1.  Determine what equipment, personnel and/or services is requested according to the system maintained by MABAS;

2.  Determine if the requested equipment, personnel, and/or services can be committed in response to the request from the Stricken Unit;

3.  Dispatch immediately the requested equipment, personnel and/or services, to the extent available, to the location of the emergency reported by the Stricken Unit in accordance with the procedures of MABAS;

4.  Notify the Stricken Unit if any or all of the requested equipment, personnel and/or services cannot be provided.

## SECTION FOUR

### Jurisdiction Over Personnel and Equipment

Personnel dispatched to aid a party pursuant to this Agreement shall remain employees of the Aiding Unit. Personnel rendering aid shall report for direction and assignment at the scene of the emergency to the Fire Chief or Senior Officer of the Stricken Unit. The party rendering aid shall at all times have the right to withdraw any and all aid upon the order of its Fire Chief or his designee; provided, however, that the party withdrawing such aid shall notify the Fire Chief or Senior Officer of the party requesting aid of the withdrawal of such aid and the extent of such withdrawal.

- 5 -

## SECTION FIVE

### Compensation for Aid

Equipment, personnel, and/or services provided pursuant to this Agreement shall be at no charge to the party requesting aid; however, any expenses recoverable from third parties shall be equitably distributed among responding parties. Nothing herein shall operate to bar any recovery of funds from any state or federal agency under any existing statutes.

## SECTION SIX

### Insurance

Each party hereto shall procure and maintain, at its sole and exclusive expense, insurance coverage, including: comprehensive liability, personal injury, property damage, workman's compensation, and, if applicable, emergency medical service professional liability, with minimum limits of $1,000,000 auto and $1,000,000 combined single limit general liability and professional liability. No party hereto shall have any obligation to provide or extend insurance coverage for any of the items enumerated herein to any other party hereto or its personnel. The obligations of the Section may be satisfied by a party's membership in a self-insurance pool, a self-insurance plan or arrangement with an insurance provider approved by the state of jurisdiction. The MABAS may require that copies or other evidence of compliance with the provisions of this Section be provided to the MABAS. Upon request, Member Units shall provide such evidence as herein provided to the MABAS members.

## SECTION SEVEN

### Indemnification

Each party hereto agrees to waive all claims against all other parties hereto for any loss, damage, personal injury or death occurring in consequence of the performance of this Mutual Aid Agreement; provided, however, that such claim is not a result of gross negligence or willful misconduct by a party hereto or its personnel.

Each party requesting or providing aid pursuant to this Agreement hereby expressly agrees to hold harmless, indemnify and defend the party rendering aid and its personnel from any and all claims, demands, liability, losses, suits in law or in equity which are made by a third party. This indemnity shall include attorney fees and costs that may arise from providing aid pursuant to this Agreement. Provided, however, that all employee benefits, wage and disability payments, pensions, workman's compensation claims, damage to or destruction of equipment and clothing, and medical expenses of the party rendering aid shall be the sole and exclusive responsibility of the respective party for its employees, provided, however, that such claims made by a third party are not the result of gross negligence or willful misconduct on the part of the party rendering aid.

## SECTION EIGHT

### Non-Liability for Failure to Render Aid

The rendering of assistance under the terms of this Agreement shall not be mandatory if local conditions of the Aiding Unit prohibit response. It is the responsibility of the Aiding Unit to immediately notify the Stricken Unit of the Aiding Unit's inability to respond; however, failure to immediately notify the Stricken Unit of such inability to respond shall not constitute evidence of noncompliance with the terms of this section and no liability may be assigned.

No liability of any kind or nature shall be attributed to or be assumed, whether expressly or implied, by a party hereto, its duly authorized agents and personnel, for failure or refusal to render aid. Nor shall there be any liability of a party for withdrawal of aid once provided pursuant to the terms of this Agreement.

## SECTION NINE

### Term

This Agreement shall be in effect for a term of one year from the date of signature hereof and shall automatically renew for successive one year terms unless terminated in accordance with this Section.

Any party hereto may terminate its participation in this Agreement at any time, provided that the party wishing to terminate its participation in this Agreement shall give written notice to the Board of their Division and to the Executive Board specifying the date of termination, such notice to be given at least 90 calendar days prior to the specified date of termination of participation. The written notice provided herein shall be given by personal delivery, registered mail or certified mail.

## SECTION TEN

### Effectiveness

This Agreement shall be in full force and effective upon approval by the parties hereto in the manner provided by law and upon proper execution hereof.

## SECTION ELEVEN
### Binding Effect

This Agreement shall be binding upon and inure to the benefit of any successor entity which may assume the obligations of any party hereto. Provided, however, that this Agreement may not be assigned by a Member Unit without prior written consent of the parties hereto; and this Agreement shall not be assigned by MABAS without prior written consent of the parties hereto.

## SECTION TWELVE
### Validity

The invalidity of any provision of this Agreement shall not render invalid any other provision. If, for any reason, any provision of this Agreement is determined by a court of competent jurisdiction to be invalid or unenforceable, that provision shall be deemed severable and this Agreement may be enforced with that provision severed or modified by court order.

## SECTION THIRTEEN
### Notices

All notices hereunder shall be in writing and shall be served personally, by registered mail or certified mail to the parties at such addresses as may be designated from time to time on the MABAS mailing lists or, to other such address as shall be agreed upon.

## SECTION FOURTEEN
### Governing Law

This Agreement shall be governed, interpreted and construed in accordance with the laws of the State of Illinois.

- 9 -

## SECTION FIFTEEN

### Execution in Counterparts

This Agreement may be executed in multiple counterparts or duplicate originals, each of which shall constitute and be deemed as one and the same document.

## SECTION SIXTEEN

### Executive Board of MABAS

An Executive Board is hereby established to consider, adopt and amend from time to time as needed rules, procedures, by-laws and any other matters deemed necessary by the Member Units. The Executive Board shall consist of a member elected from each Division within MABAS who shall serve as the voting representative of said Division on MABAS matters, and may appoint a designee to serve temporarily in his stead. Such designee shall be from within the respective division and shall have all rights and privileges attendant to a representative of that Member Unit.

A President and Vice President shall be elected from the representatives of the Member Units and shall serve without compensation. The President and such other officers as are provided for in the by laws shall coordinate the activities of the MABAS.

## SECTION SEVENTEEN

### Duties of the Executive Board

The Executive Board shall meet regularly to conduct business and to consider and publish the rules, procedures and by laws of the MABAS, which shall govern the Executive Board meetings and such other relevant matters as the Executive Board shall deem necessary.

## SECTION EIGHTEEN

### Rules and Procedures

Rules, procedures and by laws of the MABAS shall be established by the Member Units via the Executive Board as deemed necessary from time to time for the purpose of administrative functions, the exchange of information and the common welfare of the MABAS.

## SECTION NINETEEN

### Amendments

This Agreement may only be amended by written consent of all the parties hereto. This shall not preclude the amendment of rules, procedures and by laws of the MABAS as established by the Executive Board to this Agreement.

The undersigned unit of local government or public agency hereby has adopted, and subscribes to, and approves this MUTUAL AID BOX ALARM SYSTEM Agreement to which this signature page will be attached, and agrees to be a party thereto and be bound by the terms thereof.

This Signatory certifies that this Mutual Aid Box Alarm System Agreement has been adopted and approved by ordinance, resolution, or other manner approved by law, a copy of which document is attached hereto.

VILLAGE OF BARRINGTON
Political Entity

President or Mayor

10/25/89
Date

ATTEST: _Nancy Barrett_

_Deputy Village Clerk_
Title

10/26/89
date

- 12 -

MUTUAL AID BOX ALARM SYSTEM
EXECUTIVE BOARD BY-LAWS

Article I          Name: Mutual Aid Box Alarm System Executive Board

Article II         Purpose:

                   To coordinate working relations between all M.A.B.A.S.
                   Divisions and encourage and help new areas to form
                   divisions.

Article III        Membership:

                   Each division shall be represented by one member who
                   shall be designated by their respective division.

Article IV         Officers and Elections:

                   The M.A.B.A.S. Executive Board shall elect a President
                   and Vice President who shall serve a two year term.
                   Election shall be held at the first meeting of the year
                   on even numbered years. Officers may serve consecutive
                   terms. The President may appoint any committee
                   necessary to conduct business for the Executive Board.

Article V          Duties of Officers:

                   President:          Schedule Meetings
                                       Make up Meeting Agenda
                                       Preside over Meetings
                                       Establish Committees

                   Vice President:     Handle Duties of President when he is
                                       absent.

Article VI         Executive Secretary:
                   The President shall appoint an Executive Secretary who
                   shall serve at the discretion of the Board. The
                   Executive Secretary is not required to be a member of
                   the Executive Board to be selected.

M.A.B.A.S. Executive Board By-Laws
Page 2

Article VII     <u>Duties of the Executive Secretary:</u>

A. He shall be the Recording Secretary of the Board.
B. Take minutes of all meetings.
C. Keep a history of M.A.B.A.S.
D. Have physical custody of all MABAS minutes, contracts, and documents.
E. Attend all M.A.B.A.S. Executive Board meetings.
F. Send minutes of all meetings to all Executive Board members.
G. Provide notification and agenda to Executive Board members for all scheduled meetings.
H. Any other task agreed upon mutually with the Executive Board.

Article VIII     <u>Meeting Schedule and Agenda:</u>

The Executive Board shall meet at such times and dates as established by the Executive Board. In no case shall the Executive Board meet not less than quarterly.

The agenda for Executive Board meetings are as follows:
1. Call to Order.
2. Approval of Minutes of prior meeting.
3. Communication and Correspondence.
4. Committee Reports.
5. Old Business.
6. New Business.
7. Division Reports.
8. Adjourn.

Article IX     <u>Dues and Eligibility Criteria:</u>

Actions of the Executive Board require a vote of approval of more than 50% of the Divisions of MABAS. There shall be no annual dues. Assessments as needed are made by a vote of the members of the Executive Board. The Executive Board issues approval of eligibility or termination upon recommendation from a Division. The Executive Board has the power to indemnify itself through insurance or bonds as it deems necessary for the good of the organization.

Article X      <u>Guidelines</u>:

Executive Board shall set up procedures to be recommended to all divisions including but not limited to:

1. Use of standard box cards.
2. Use of abbreviations.
3. Use of radio and testing procedures.
4. List of definitions.
5. Training procedures.
6. Incident Command procedures.
7. Communication procedures.

Article XI      <u>Booklet</u>:

An information booklet shall be compiled by the Executive Board, containing all pertinent information needed in the operation of a M.A.B.A.S. division. This booklet shall be updated by the Executive Board as often that is deemed necessary.

Article XII      <u>Amendments</u>:

A quorum of the Executive Board is necessary for any amendment of the By-Laws. The By-Laws of any section or provision thereof, may be amended, rescinded or expanded by approval of two-thirds (2/3) vote of the members of the Divisions of MABAS. A written proxy constitutes being present at a meeting.

FIRE MEMBERS

## DIVISION ONE

Addison Fire Department
Arlington Heights Fire Department
Bloomingdale Fire Department
Buffalo Grove Fire Department
Des Plaines Fire Department
Elk Grove Township Fire Department
Elk Grove Village Fire Department
Hoffman Estates Fire Department
Itasca Fire Department
Mount Prospect Fire Department
Palatine Fire Department
Prospect Heights Fire Department
Rolling Meadows Fire Department
Roselle Fire Department
Schaumburg Fire Department
Wheeling Fire Department
Wood Dale Fire Department

## DIVISION TWO

Algonquin/Lake in the Hills Fire Department
Bartlett and Countryside Fire Department
Carpentersville and Countryside Fire Department
East Dundee and Countryside Fire Department
Elgin Fire Department
Hanover Park Fire Department
Pingree Grove/Countryside Fire Department
Rutlands/Dundee Township Fire Department
South Elgin/Countryside Fire Department
Streamwood Fire Department
West Dundee Fire Department

## DIVISION THREE

Deerfield Bannockburn Fire Department
Evanston Fire Department
Glenbrook Fire Department
Glencoe Fire Department
Glenview Fire Department
Glenview Navel Air Station Fire Department
Highland Park Fire Department
Highwood Fire Department
Morton Grove Fire Department
Niles Fire Department
Northbrook Fire Denartment
Northfield Fire Department
North Maine Fire Department
Park Ridge Fire Department
Skokie Fire Department
Wilmette Fire Department
Winnetka Fire Department

DIVISION FOUR

Abbott Fire Department
Antioch Fire Department
Barrington Fire Department
Bonnie Brook Fire Department
Countryside Fire Department
Ft. Sheridan Fire Department
Fox Lake Fire Department
Grayslake Fire Department
Great Lakes Fire Department
Gurnee Fire Department
Knollwood Fire Department
Lake Bluff Fire Department
Lake Forest Fire Department
Lake Villa Fire Department
Lake Zurich Fire Department
Libertyville Fire Department
Long Grove Fire Department
Mundelein Fire Department
Newport Township Fire Department
North Chicago Fire Department
Round Lake Fire Department
Vernon Fire Department
Wauconda Fire Department
Waukegan Fire Department
Winthrop Harbor Fire Department
Zion Fire Department

DIVISION FIVE

Cary Fire Department
Crystal Lake Fire Department
Fox River Grove Fire Department
Harvard Fire Department
Hebron Fire Department
Huntly Fire Department
Marengo Fire Department
McHenry Fire DEpartment
Nunda Rural Fire Department
Richmond Fire Department
Spring Grove Fire Department
Union Fire Department
Wonder Lake Fire Department
Woodstock Fire Department
Woodstock Rural Fire Department

DIVISION SIX

Bensenville Fire Department
Elmwood Park Fire Department
Franklin Park Fire Department
Leyden Fire DEpartment
Northlake Fire Deoartment
Norwood Park Fire Department
River Grove Fire Department
Rosemont Fire Department
Schiller Park Fire Department
Stone Park Fire Department

DIVISION SEVEN

Bellwood Fire Department
Berkley Fire Department
Broadview Fire Department
Hillside Fire Department
Maywood Fire Department
Melrose Park Fire Department
North Riverside Fire Department
Westchester Fire Department

DIVISION EIGHT

Belvidere Fire Department
Blackhawk Fire Department
Boone County Fire Department
Byron Fire Department
Cherry Valley Fire Department
Durand Fire Department
Harlem-Roscoe Fire Department
Loves Park Fire Department
New Milford Fire Department
North Park Fire Department
Northwest Fire Department
Pecatonica Fire Department
Rockford Fire Department
Rocton Fire Department
Seward Fire Department
South Beloit Fire Department
Stillman Valley Fire Department
Shirland Fire Department
West Suburban Fire Department
Winnebago Fire Department

DIVISION NINE

Chicago Fire Department

DIVISION TEN

Argonne Fire Department
Belmont Fire Department
Bolingbrook Fire Department
Brookfield Fire Department
Clarendon Heights Fire Department
Clarendon Hills Fire Department
Darien/Woodridge Fire Department
Downers Grove Fire Department
Forest View Fire Department
Hinsdale Fire Department
LaGrange Fire Department
LaGrange Park Fire Department
Lemont Fire Department
Lyons Fire Department
McCook Fire Department
Pleasantview Fire Department
Riverside Fire Department
Romeoville Fire Department
Tri State Fire Department
Western Springs Fire Department
Westmont Fire Department

DIVISION ELEVEN

Berwyn Fire Department
Cicero Fire Department
Forest Park Fire Department
Oak Park Fire Department
River Forest Fire Department
Stickney Fire Department

DIVISION 101

Bristol Township Fire Department
Kenosha Fire Department
Paris Fire Department
Pleasant Prairie Fire department
Randal Fire Department
Salem Fire Department
Silver Lake Fire Department
Somers Fire Department
Trevor Fire Department
Tiven Lake Fire Department
Wilmeont Fire Department
Wheatland Fire Department

VILLAGE OF BARRINGTON

---

ORDINANCE # 2450

An Ordinance Adding a New Article IV, Hazardous Substances Removal and Abatement to Chapter 10 of the Barrington Village Code

---

ADOPTED BY THE CORPORATE AUTHORITIES OF THE VILLAGE OF BARRINGTON THIS 24TH DAY OF MAY, 1993.

---

Published in pamphlet form by authority of the Corporate Authorities of the Village of Barrington, Cook and Lake Counties, Illinois, this 24th day of May, 1993.

Exhibit B: Village of Barrington Ordinance

Ordinance No: *93-2450*

**AN ORDINANCE**
**ADDING A NEW ARTICLE IV, HAZARDOUS SUBSTANCES REMOVAL**
**AND ABATEMENT TO CHAPTER 10 OF THE BARRINGTON VILLAGE CODE**

WHEREAS, the Village of Barrington has the power and authority to abate public nuisances and to take appropriate emergency measures when public nuisances pose imminent danger to the public health, safety and welfare; and

WHEREAS, hazardous materials exist in significant quantities in occupancies within the limits of the Village of Barrington, and are transported through the Village on a regular basis by highway and railway, and may be carried into these jurisdictions by waterway and through the air; and

WHEREAS, hazardous materials incidents can be extremely expensive to mitigate because (1) of the high cost of disposable protective equipment (for personnel, non-reusable absorbants, neutralizing chemicals, leak-stopping devices, and decontamination and clean-up equipment); and because (2) equipment which was intended to be reusable may be contaminated, resulting in costly decontamination procedures or total replacement of turn-out gear, airpacks, special protective clothing, monitoring equipment, and/or vehicles; and

WHEREAS, because even small hazardous materials incidents are typically personnel and equipment-intensive operations which routinely require trained personnel and equipment in addition to those which are commonly found in one department, the Village of

Barrington is presently affiliated with two regional hazardous materials response teams (Lake County Hazardous Materials Response Team-MABAS Division-4, and the Hazardous Materials Mutual Response Team-MABAS Division-1), so that pursuant to the Mutual Aid Box Alarm System (MABAS) agreement to which it is a party, its personnel may assist other communities, and other communities may assist the Village of Barrington, and in addition to the trained personnel and equipment from the Barrington Fire Department, personnel and equipment from many surrounding communities may be called upon to help mitigate an incident; and

WHEREAS, hazardous materials incidents may occur in which, in order to respond properly, the Fire Department requires the assistance of personnel or experts other than employees of the Village of Barrington, or equipment which the Village does not have, and the Village of Barrington may require such personnel, experts, or equipment immediately to respond to an emergency.

NOW THEREFORE, BE IT ORDAINED by the President and Board of Trustees of the Village of Barrington, Cook and Lake Counties, Illinois as follows:

SECTION 1: That the recitals set forth hereinabove are true and correct and are adopted by the Corporate Authorities of the Village of Barrington as the findings and statement of policy of the Village.

SECTION 2: That Chapter 10 of the Barrington Village Code is hereby amended by adding the following Article IV thereto:

"Article IV. Hazardous Substance Removal and Abatement.

Section 10.29 Definitions. For the purposes of this Article, the following words and phrases shall have the meanings respectively ascribed to them by this Section:

2

A.    ABANDONMENT:

The act of leaving a thing with the intent not to retain possession of or assert ownership or control over it. The intent need not coincide with the act of leaving. It is prima facie evidence of the necessary intent to abandon a vehicle(s), vessel(s), and/or container(s) containing a hazardous substance that:

1.    The vehicle(s), vessel(s), and/or container(s) has been left for more than two days unattended and unmoved; or

2.    License plates or other identifying marks have been removed from the vehicle(s), vessel(s), and/or container(s); or

3.    The vehicle(s), vessel(s), and/or container(s) has been damaged or is deteriorated so extensively that it has value only for junk or salvage; or

4.    The owner or operator has been notified by a law enforcement agency to remove the vehicle(s), vessel(s), and/or container(s) and it has not been removed within twenty-four hours after notification.

B.    CONTAINER:

A receptacle used for the shipment of goods, meeting one or more of the following criteria:

1.    Of permanent character and strong enough for repeated use.

2.    A cargo container used to transport small quantities of materials (e.g. box, drum, carboy).

3.    Specifically designed to facilitate the carriage of goods by one or more modes of transport without intermediate reloading.

C.    EMERGENCY RESPONSE AUTHORITY:

A unit of local government, or volunteer fire protection organization, that provides or procures firefighting services, emergency rescue services, emergency medical services, hazardous materials response teams, or civil defense.

3

D. **FIRE CHIEF:**

The Fire Chief of the Village of Barrington, or his authorized representative.

E. **HAZARDOUS MATERIALS:**

1.  Any material as designated pursuant to the federal "Comprehensive Environmental Response, Compensation, and Liability Act of 1980," 42 USC 9601(14), as amended; or

2.  Any substance, material, waste, or mixture designated as a hazardous material, waste, or substance according to 49 Code of Federal Regulations (CFR) or according to Ill. Rev. Stat. Ch. 111-1/2 paras. 1300.14 and 1300.15, as amended, excluding highway route-controlled quantities of radioactive materials as defined in 49 CFR 173.403(1), excluding ores, the products from mining, milling, smelting, and similar processing of ores, and the wastes and tailings therefrom, and excluding special fireworks as defined in 49 CFR 173.88(d) when the aggregate amount of flash powder does not exceed fifty pounds; or

3.  Any material which is listed on the list of Environmental Protection Agency pollutants, 40 CFR 401.15, as amended; or

4.  Any material which is classified by the National Fire Protection Association (NFPA) as either a flammable liquid, a Class II combustible liquid, or a Class III A combustible liquid; or

5.  Any material which has been determined by the party storing it, or having control of it, through testing or other objective means, to be likely to create a significant potential or actual hazard to public health, safety, or welfare or to the environment. This definition shall not establish a requirement to test for the purposes of this Article; or

6.  Any material which has been determined by the Fire Chief, through information based on appraisal and assessment from reliable resources, to be likely to create a significant potential or actual hazard to public health, safety, or welfare or to the environment, including material which cannot be immediately identified but which from its observable characteristics in the totality of the circumstances

4

the Fire Chief may reasonably deem to create a
significant potential or actual hazard. The fact
that the material in question is not designated as
a hazardous substance pursuant to sub-sections 1
through 5 of this definition or is excluded by
legislation or by the NFPA classifications of sub-
sections 1 through 4 of this Subsection 10.29(E)
does not preclude the Fire Chief from determining
that the material is a hazard, given the totality
of the particular facts and circumstances.

F.   HAZARDOUS MATERIAL INCIDENT:

Any emergency circumstances involving the abandonment or
the sudden release or threatened release of a hazardous
material as defined in Section 10.29(E) which, in the
judgment of an emergency response authority, whether said
emergency response authority be the Village, a MABAS
agreement member unit, or a federal or state agency or
other local agency, threatens immediate and irreparable
harm to the environment or the health, safety, or welfare
of any individual other than individuals exposed to the
risks associated with hazardous substances in the normal
course of their employment. "Hazardous material inci-
dent" also includes incidents of intentionally releasing
or abandoning a hazardous substance, whether or not such
releasing or abandoning is found to threaten immediate
and irreparable harm, but such term does not include any
release of a hazardous substance authorized pursuant to
any federal, state, or local law or regulation.

G.   PERSON:

Any  individual,  public  or  private  corporation,
partnership, association, firm, trust, or estate, the
state or any department, institution or agency thereof,
any municipal corporation, county, city and county, or
other political subdivision of the state, or any other
legal entity whatsoever which is recognized by law as the
subject of rights and duties.

H.   RELEASE:

Any actual or threatened spilling, leaking, pumping,
pouring, emitting, emptying, discharging, injecting,
escaping, leaching, dumping, vaporizing, evaporating or
disposing into the environment, exclusive of (1) any
release which results in exposure to persons solely
within a work place, with respect to a claim which such
persons may assert against the employer of such persons;
(2) emissions from the engine exhaust of a motor vehicle,
rolling stock, aircraft, vessel, or pipeline pumping

5

station engine; (3) release of source, byproduct, or special nuclear material from a nuclear incident, as those terms are defined in Atomic Energy Act of 1954, if such release is subject to requirements with respect to financial protection established by the Nuclear Regulatory Commission under Section 1870 of such Act; (4) the normal application of fertilizer; and (5) a release authorized pursuant to any federal, state or local law or regulation.

I.   REMOVE OR REMOVAL:

The cleanup, containment, or removal of released hazardous substances from the environment; such actions as may be necessary to be taken in the event of the threat of release of hazardous substances into the environment; such actions as may be necessary to monitor, assess, and evaluate the release of or threat of release of hazardous substances, the disposal of removed material; or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or the environment, which may otherwise result from a release or threat of release. The term includes, in addition, without being limited to, security fencing or other measures to limit access, provision of alternative water suppliers, temporary evacuation and housing of threatened individuals, and any emergency assistance which may be provided under The Illinois Emergency Services and Disaster Agency Act of 1975 (Ill. Rev. Stat., Ch. 127, par. 1101 et seq.), as amended, pursuant to the MABAS agreement.

J.   RESPONSIBLE PARTY:

A person or persons who own or have custody of hazardous materials involved in an incident requiring emergency action by an emergency response agency; a person or persons who own or have custody of bulk or non-bulk packaging or a transport vehicle that contains hazardous materials involved in an emergency response incident; or a person or persons who cause or substantially contribute to the cause of an emergency action. For purposes of this Section and Section 10.32, "own" and "have custody" shall include any ownership, custodial, fiduciary or other legally cognizable interest in the material manufactured, stored, released or abandoned in the Village.

6

K.  VEHICLE:

Any device which is capable of moving itself, or of being moved, from place to place upon wheels or endless tracks, or by propulsion through air or water. The term includes, but is not limited to any motor vehicle, trailer, semi-trailer, boat, plane, train, tank, or track machine.

Section 10.30  Abandonment or Release of Hazardous Materials

The abandonment or release of hazardous materials or of containers or vehicles containing hazardous materials on public or private property within the Village of Barrington, or at a location outside the Village so as to cause a hazardous material incident as defined in Section 10.29(F) of this Article and create an imminent danger to the health, safety and welfare of citizens of the Village is hereby declared to be a public nuisance.

Section 10.31  Removal or Abatement of Hazardous Material Incidents

A.  The Fire Department is authorized to summarily remove or abate the effects of any hazardous material incident involving the abandonment or actual or threatened release of hazardous material (1) upon or into property or facilities in the Village, (2) pursuant to any Mutual Aid Box Alarm System (MABAS) agreement in effect, it being understood that such aid will be rendered outside the Village limits, or (3) outside the corporate and/or MABAS response limits where the health, welfare, and/or property of the Village and/or those people within its protection are endangered.

B.  In the event that any person undertakes voluntarily, or upon order of the Fire Chief, to remove or abate the effects of any actual or threatened hazardous substance release upon or into any property or facility in the Village, the Fire Chief may take such action as is necessary to supervise or verify the adequacy of the removal or abatement. The person(s) described in Section 10.32 (1) through (4) of this Article shall be liable to the Village for all costs direct or indirect incurred as a result of such supervision or verification.

C.  The Fire Chief or his designated agent is authorized to request assistance from mutual aid response personnel, including but not limited to fire, emergency medical services, or hazardous material personnel responding from neighboring communities, and to contract with or

7

otherwise arrange for assistance from professional contractors, consultants or other experts in mitigating or abating a hazardous material incident. If the hazardous material incident in question requires an emergency response to prevent imminent danger to the public health, safety and welfare, the Fire Chief is authorized to contract with or make other arrangements for the services of professional contractors, consultants and other experts as needed without prior notice to the person in control or having custody of the hazardous material in question.

D.   When the hazardous material incident does not present an emergency, or if after the emergency situation is abated any additional cleanup, security or other mitigation of the incident is required, the Fire Department shall serve a notice upon all responsible persons that the hazardous material incident has created a public nuisance, and that the responsible parties shall be charged with any costs of abating the nuisance that the Village incurs if, within 72 hours of the notice, the responsible parties have not begun to abate the nuisance.

### Section 10.32   Liability for Hazardous Material Removal or Abatement Costs

The following described responsible parties shall be jointly and severally liable to the Village for the payment of all costs direct or indirect incurred by the Village, as defined below in Section 10.33, as a result of such removal and/or abatement activity, and no payment made by the Village to any member unit of the MABAS agreement rendering aid to the Village pursuant to said agreement shall be deemed to be a waiver by the Village of any claim it may have against any responsible party, or its legal heirs, successors, or assigns.

(1)   The person or persons whose negligent, reckless, or willful act or omission proximately caused such release; and

(2)   The person or persons who owned or had custody or control of the hazardous substance at the time of such release, without regard to fault or proximate cause; and

(3)   The person or persons who owned or had custody or control of the container, transport vehicle, or transport vessel which held such hazardous substance at the time of, or immediately prior to, such release, without regard to fault or proximate cause.

8

(4) Any person owning or in control of any real property from which a hazardous substance is or may be released.

### Section 10.33  Removal or Abatement Costs

A.    For the purposes of this Article, costs incurred by the Village shall include, but shall not be limited to, the following, whether incurred within the Village, or outside the Village limits as a result of rendering mutual aid pursuant to the MABAS agreement: actual labor cost of Village personnel, including benefits and administrative overhead; medical treatment and surveillance of personnel exposed to hazardous materials; costs of consultants whose expertise is required to remove or abate the incident or to assess the nature and extent of damage done; cost of equipment operation; replacement cost of vehicles or equipment which, in the determination of the Fire Chief, is contaminated beyond reuse or repair; laboratory costs; costs of materials or equipment obtained directly by the Village; cost of any labor and materials contracted for or provided pursuant to a mutual aid agreement and/or an intergovermental cooperation agreement to which the Village is a party.

B.    When the action to remove or abate the effects of a hazardous substance includes extinguishing a fire, the costs may only include the expenses, such as those set forth in Section 10.33(A), related to the hazardous substance, including but not limited to specialized foam or dry chemical fire extinguishing agents and hoses, and not any expense related to extinguishing the fire.

C.    Nothing contained in this Article shall be construed to change or impair any right of recovery or subrogation the Village of Barrington or any other emergency response authority may have arising under any mutual aid agreement or any other ordinance, statute, or provision of law. No criminal or quasicriminal remedy for any wrongful action shall be excluded or impaired by this Article.

D.    The Director of Finance shall allow for a reasonable time for the responsible party to pay the reimbursement amount and shall consider any written objections from a responsible party concerning the type and amount of expense. In the event that a responsible party has made no payment or response to the request for reimbursement within thirty days from the date of the invoice, the Director of Finance is hereby authorized to direct the Village Attorney to take appropriate legal action against the responsible party.

9

## Section 10.34  Liberal Construction

This Article shall be liberally construed to give effect
to its purpose, which is to shift the burden of liability
for the aforesaid removal or abatement costs from the
citizens of Barrington to those responsible for the
incident.

## Section 10.35  Severability

If any provision, clause, sentence, paragraph, section
or part of this Article, or application thereof to any
person or circumstance, shall for any reason be adjudged
by a court of competent jurisdiction to be
unconstitutional or invalid, said judgment shall not
affect, impair or invalidate the remainder of the
Article and the application of such provision to other
persons or circumstances, but shall be confined in its
operation to the provision, clause, sentence, paragraph,
section or part thereof directly involved in the
controversy in which such judgment shall have been
rendered and to the person or circumstances involved.
It is hereby declared to be the legislative intent of the
Corporate Authorities that this Article would have been
adopted had such unconstitutional or invalid provisions,
clause, sentence, paragraph, section or part thereof not
been included."

**SECTION 3:**      Due to the urgency of adopting and implementing
the aforesaid provisions in order to address the best interests of
and protect the public health, safety and welfare of the citizens
of the Village of Barrington from conditions which currently exist
in the Village, this Ordinance shall immediately be in full force
and effect from and after its passage, approval and publication as
provided by law.

10

**SECTION 4:**    This Ordinance shall be published in pamphlet form.

PASSED THIS _24TH_ DAY OF _MAY_____, 1993 BY ROLL CALL VOTE AS FOLLOWS:

| AYES | NAYS | ABSENT | ABSTAIN |
|------|------|--------|---------|
| D. SCHMInT | Ross | | |
| ConnenS | C. SCHMInT | | |
| Ryan | | | |
| HANSEN | | | |
| | | | |

                    APPROVED THIS _24TH_ DAY OF _MAY_____, 1993

                    _____
                    **VILLAGE PRESIDENT**

ATTESTED AND FILED THIS _24TH_ DAY OF _MAY_____, 1993.

_____
**VILLAGE CLERK**
    Published in Pamphlet Form the _24_ Day of _May_____, 1993.

                                                        11

# EXHIBIT B

FILED
1/5/2018 10:30 AM
ERIN CARTWRIGHT WEINSTEIN
Clerk of the Circuit Court
Lake County, Illinois

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

Village of Barrington and Village of Lake Zurich    )
   )
                        Plaintiff(s)   )
   )
         vs.                        )
   )
   )
Stanislaw Kacki and XAN Systems    )
                    Defendant(s)  )  Gen No: 17 L 979

### APPEARANCE

☑ **By an attorney:**

The undersigned Kathleen McDonough _____ hereby enters an appearance

on behalf of Defendants, Stanislaw Kacki and XAN Systems _____ in the above entitled cause.


☐ **By an individual pro se:**

The undersigned _____ hereby enters an appearance

on behalf of myself in the above entitled cause.


_____
Signature


Prepared by:

Name: Kathleen McDonough - WILSON ELSER _____ Pro Se☐

Address: 55 W. Monroe Street, Suite 3800 _____

City: Chicago _____ State: IL

Phone: (312) 704-0550 _____ Zip Code: 60603

ARDC #: 6229813 _____

Fax: (312) 704-1522 _____

E-mail address: kathleen.mcdonough@wilsonelser.com

#171 – 8  (Rev 12/17)

# EXHIBIT C

## XAN SYSTEMS, INC.
## AFFIDAVIT OF CITIZENSHIP & CONSENT TO REMOVAL

I, Julia Usyatynsky, being of legal age, swear under penalty of perjury that the following statements are true and accurate, to the best of my knowledge and belief:

1. I am a citizen and resident of the Province of Ontario in the Country of Canada.

2. I am the Principal and President of Xan Systems, Inc.

3. Defendant Xan Systems, Inc. is incorporated in the Province of Ontario in the Country of Canada, with its principal place of business in Newmarket, Ontario.

4. Xan Systems, Inc. does not object to the removal of this matter from Lake County, Illinois to the U.S. District Court for the Northern District of Illinois.

Further Affiant Sayeth not.

By: _____

Julia Usyatynsky, Principal and President
Xan Systems, Inc.

SUBSCRIBED and SWORN to before me
On _November 20_____, 2017.

_____
NOTARY PUBLIC

**DANA KATHLEEN DYMENT**
*Notary Public*
*in and for*
**the Province of Ontario** *(no expiry)*

**DANA DYMENT**
Barrister and Solicitor
17665 Leslie Street, Unit 45
Newmarket, Ontario L3Y 3E3



2416691v.1